## S02G1739. COTTON STATES MUTUAL INSURANCE COMPANY v. BRIGHTMAN.
### (580 SE2d 519)

FLETCHER, Chief Justice.

After James Brightman obtained a $1,787,500 judgment against Lynn Martin and Gregory Cumbo for injuries suffered in a 1992 automobile collision, Martin assigned to Brightman her bad faith claim against her insurance company, Cotton States Mutual Insurance Company. Brightman sued Cotton States for its bad faith and negligent refusal to settle the personal injury action, the jury returned a verdict in his favor, and the Court of Appeals for the State of Georgia affirmed.[1] We granted a writ of certiorari to consider whether an insurer is liable under *Southern General Insurance Company v. Holt*[2] when it fails to tender its policy limits because the plaintiff's demand contains a condition beyond the insurer's control. We hold that an insurance company in a case involving multiple insurers may be liable to its insured on a bad faith claim when it fails to tender its policy limits in response to a settlement offer solely because the offer also seeks the policy limits from other insurers. Because there was sufficient evidence for the jury to find that Cotton States acted unreasonably in failing to tender its policy limits in response to Brightman's settlement offer in January 1995, we affirm.

Brightman was seriously injured in August 1992 when the van owned by Martin and driven by Cumbo struck his car as he was turning left at an intersection controlled by a traffic light. Police charged Brightman with failure to yield the right of way and charged Cumbo with speeding and causing serious injury by a vehicle. Police later charged Cumbo with driving under the influence based on a blood test that revealed the presence of marijuana metabolites in his blood. There was no evidence at the scene that Cumbo's driving was impaired.

On January 31, 1994, Brightman's attorney wrote Cotton States offering to settle his claims against Martin and Cumbo for $300,000, which was the limits of Martin's policy of liability insurance. The letter said that Brightman had sustained traumatic brain injury and attached medical bills totaling $329,457.20. On April 20, 1994, Cotton States declined to accept the offer to settle for the policy limits, citing a police officer's testimony that Brightman caused the accident, the company's inability to discover how a second officer calculated Cumbo's speed, and its desire to await the outcome of Cumbo's DUI case. As a result, Brightman withdrew his offer to settle.

Brightman sued Martin and Cumbo in May 1994, and they filed

---

[1] See *Cotton States Mut. Ins. Co. v. Brightman*, 256 Ga. App. 451 (568 SE2d 498) (2002).
[2] 262 Ga. 267 (416 SE2d 274) (1992).

a counterclaim. During discovery, the parties learned that Cumbo had a $100,000 policy with State Farm Mutual Automobile Insurance Company. The investigating officers testified in depositions that the collision was caused by Brightman's failure to yield the right of way and Cumbo's speeding and driving under the influence. One officer calculated that Cumbo was driving 58 to 65 miles per hour in the 45-mile-per-hour zone. A third officer testified that he smelled a strong odor of marijuana in Cumbo's van at the time of the collision. In January 1995, a non-binding arbitration panel found in Brightman's favor and awarded him $2 million.

On January 30, 1995, Brightman offered Cotton States a final opportunity to settle the case for Martin's policy limits of $300,000. The offer stated:

> We are willing to give Cotton States Mutual Insurance Company one last chance in which to settle this case for your policy limits of $300,000.00. We will agree to accept your policy limits, contingent upon State Farm Mutual Automobile Insurance Company also tendering its limits of $100,000, for the next ten days. If you have not accepted this offer within ten days from the date of this letter, then it is to be considered irrevocably withdrawn.

The ten-day period expired on February 9 without either Cotton States or State Farm tendering its policy limits. Although State Farm continued to deny coverage, Cotton States offered on March 17, 1995, to pay its policy limits of $300,000 in exchange for a general release from Brightman and a dismissal of the complaint with prejudice. Brightman declined the offer.

The personal injury action went to trial in 1996, and the jury awarded Brightman nearly $1.8 million in damages. Cotton States paid its $300,000 policy limits and State Farm paid $100,000, leaving an excess judgment of $1,387,500 against Martin and Cumbo. After Brightman filed a lien on Martin's house, she assigned to him her claim against Cotton States for its bad faith or negligent refusal to settle the personal injury action within its policy limits. In exchange, Brightman agreed not to seek any of her assets. Brightman sued Cotton States, the trial court denied the insurer's motion for a directed verdict, and the jury returned a verdict awarding Brightman more than $2.1 million in principal and interest.

1. An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits.[3]

---

[3] See *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (310 SE2d 513) (1984).

Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk.[4] The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy. The insured is interested in protecting itself against an excess judgment; the insurer has less incentive to settle because litigation may result in a verdict below the policy limits or a defense verdict.[5]

In determining whether the insurer has breached its duty to its insured to settle, a factual issue is sometimes presented concerning whether the insurer had an opportunity to make an effective compromise.[6] In *Southern General Insurance Co. v. Holt*, this Court addressed whether the insured had a bad faith claim against her insurance company for its failure to accept the plaintiff's time-limited settlement offer within the policy limits.[7] We held that the insurer had a duty to its insured to respond to the plaintiff's deadline to settle the personal injury claim within policy limits when the insurer had knowledge of clear liability and special damages exceeding the policy limits. Our holding in *Holt* was consistent with the general rule that the issue of an insurer's bad faith depends on whether the insurance company acted reasonably in responding to a settlement offer.[8]

Although this case also involves an insurer's failure to respond within a specific time limit, it presents an additional issue concerning the insurer's opportunity to accept the plaintiff's offer to settle. Whereas only one insurance company was involved in *Holt*, Brightman's settlement offer in January 1995 involved two defendants and their insurance companies. By its terms, the letter demanded that Cotton States tender its policy limits within 10 days, with the plaintiff's acceptance of the $300,000 contingent on State Farm's tendering its policy limits. The question here is whether Cotton States is excused, as a matter of law, from tendering its policy limits because the plaintiff's demand contained a condition over which Cotton States had no control.

Relying on authority from other jurisdictions, the majority deci-

---

[4] See *U.S. Fidelity & Guar. Co. v. Evans*, 116 Ga. App. 93 (156 SE2d 809) (1967), aff'd, 223 Ga. 789 (158 SE2d 243) (1967).

[5] See generally William Shernoff et al., *Insurance Bad Faith Litigation* 1.07[2] (2002).

[6] See *Government Employees Ins. Co. v. Gingold*, 249 Ga. 156 (288 SE2d 557) (1982) (affirming grant of summary judgment to insurer in excess liability action when insured's deliberate disappearance made settlement of underlying action impossible). See generally Stephen S. Ashley, *Bad Faith Actions: Liability and Damages* §§ 3:25-3:29 (2d ed. 1997) (discussing prerequisites of a settlement offer).

[7] See 262 Ga. at 267.

[8] See id. at 269.

sion of the court of appeals found the insurer had an "affirmative duty . . . to engage the injured party in discussions regarding an initial settlement demand in excess of policy limits."[9] Because the insurer did not respond to Brightman's conditional offer in 1995 with a counteroffer to effect a settlement, the court of appeals concluded that the evidence supported the jury's finding that Cotton States was negligent in failing to settle the underlying personal injury action. Cotton States criticizes this ruling as making an insurer liable for failing to offer its policy limits in response to a contingent demand that cannot be accepted. It argues that it never had the opportunity to settle in 1995 because the plaintiff's demand contained a condition beyond its control.

Contrary to Cotton States' contention, we are unable to conclude that it was entitled to a directed verdict on the bad faith claim because the January 1995 settlement offer was a conditional demand incapable of its acceptance.[10] At trial, Brightman presented expert testimony that the insurer had the opportunity to make an effective compromise in 1995. An insurance defense attorney and claims adjuster testified that Cotton States could have offered its $300,000 before the 10-day deadline passed without waiting to see what State Farm would do. In addition, industry experts agreed that, in cases involving multiple defendants and insurance companies, one insurance company can offer its policy limits in response to a demand — "put our money on the table" — and then let the plaintiff negotiate with the remaining insurers. This testimony is supported by the action of Cotton States in tendering its policy limits six weeks after the plaintiff's deadline expired, despite State Farm's continuing refusal to pay. If Cotton States had tendered its policy limits while the plaintiff's offer was pending, it would have done everything within its control to accept the plaintiff's offer and thus protect its policyholder from an excess verdict. In that situation, the insurance company would have given equal consideration to its insured's financial interests and fulfilled its duty to her.

Based on this evidence, we conclude that Brightman presented a jury question on whether Cotton States had an adequate opportunity to settle and therefore acted unreasonably in refusing to tender its policy limits in response to the January 1995 settlement offer. Con-

---

[9] See 256 Ga. App. at 454 (citing *Yeomans v. Allstate Ins. Co.*, 324 A2d 906) (N.J. Super. 1974) and *Young v. American Cas. Co. &c.*, 416 F2d 906 (2d Cir. 1969)). Compare *Cotton States Mut. Ins. Co. v. Fields*, 106 Ga. App. 740 (128 SE2d 358) (1962) (finding no causation based on the insurer's failure to solicit or make an offer of settlement at the insured's request).

[10] See *McNally v. Nationwide Ins. Co.*, 815 F2d 254 (3d Cir. 1987) (rejecting insurer's argument that an offer was impermissibly conditional because it required a response from more than one insurer).

struing the evidence most favorably towards Brightman as the party opposing the motion for directed verdict, there is evidence to support the jury's verdict that Cotton States breached its duty to its insured to settle Brightman's claim. By the time of the offer, Cotton States knew that the police had concluded that the driver of Martin's van was partially responsible for the collision, Brightman's damages exceeded the limits of Martin's liability policy with Cotton States, and a court-ordered arbitration panel had rendered a damages award of $2 million in Brightman's favor. Brightman's inclusion of a condition in the offer involving State Farm is insufficient for us to resolve, as a matter of law, that Cotton States acted reasonably and like the ordinarily prudent insurer in declining to tender its policy limits.

2. Although we agree with the court of appeals that the evidence supported the jury's verdict in favor of Brightman, we disagree with its description of the insurer's duty to settle. Specifically, we disapprove of the language placing an affirmative duty on the company to engage in negotiations concerning a settlement demand that is in excess of the insurance policy's limits.[11] We are also unwilling to ascribe a duty to insurers to make a counteroffer to every settlement demand that involves a condition beyond their control. Instead, we conclude that an insurance company faced with a demand involving multiple insurers can create a safe harbor from liability for an insured's bad faith claim under *Holt* by meeting the portion of the demand over which it has control, thus doing what it can to effectuate the settlement of the claims against its insured. This rule is intended to protect the financial interests of policyholders in cases where continued litigation would expose them to a judgment exceeding their policy limits while protecting insurers from bad faith claims when there are conditions involved in the settlement demand over which they have no control.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 2003 —
RECONSIDERATION DENIED JUNE 6, 2003.

*Hawkins & Parnell, H. Lane Young II, Forbes & Bowman, Morton G. Forbes, Scot V. Pool,* for appellant.

*Hudson, Montgomery & Kalivoda, James E. Hudson, David R. Montgomery, Kenneth Kalivoda,* for appellee.

*Freeman, Mathis & Gary, Philip W. Savrin, Buchanan & Land,*

---

[11] See *Cotton States Mut. Ins. Co. v. Fields,* 106 Ga. App. at 742.

*Jerry A. Buchanan, Bovis, Kyle & Burch, James E. Singer,* amici curiae.