**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 2, 2017**

# In the Court of Appeals of Georgia

A17A0735. HUGHES v. FIRST ACCEPTANCE INSURANCE   McF-034
    COMPANY OF GEORGIA, INC.

MCFADDEN, Presiding Judge.

This case involves allegations that the defendant insurer is liable for failing to

settle an insurance claim. The trial court denied summary judgment to the plaintiff

and granted summary judgment to the defendant on all claims, including those for

attorney fees and punitive damages. There are genuine issues of material fact as to the

failure-to-settle claim, so the trial court correctly denied summary judgment to the

plaintiff, but erroneously granted summary judgment to the defendant. But because

the plaintiff has pointed to no evidence of bad faith or wilful or wanton conduct

which would support the claims for attorney fees and punitive damages, the trial court

properly granted summary judgment on those claims. So we affirm in part and reverse in part.

1. *Facts and procedural posture.*

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Johnson Street Properties v. Clure*, ___ Ga. ___ (1) (___ SE2d ___) (Case Nos. S17A0811, S17X0812, decided September 13, 2017) (citations and punctuation omitted).

So viewed, the evidence shows that on August 29, 2008, Ronald Jackson caused a five-vehicle collision that resulted in his death and injured others, including Julie An and her minor child, Jina Hong, who sustained a traumatic brain injury. Jackson was insured by First Acceptance Insurance Company of Georgia, Inc. The liability limits of that policy are $25,000 per person and $50,000 per accident. On September 10, 2008, counsel for An and Hong contacted First Acceptance and stated, in part, that he looked forward to working with the insurer to resolve the matter and that he would forward a settlement demand when his clients had finished treatment

2

for their injuries. Thereafter, on January 15, 2009, counsel for First Acceptance sent a letter to attorneys for all of the injured parties, including counsel for An and Hong, seeking to schedule a settlement conference with all parties. On February 2, 2009, counsel for First Acceptance sent another letter to all of the parties requesting participation in a settlement conference.

On June 2, 2009, the attorney for An and Hong sent two letters by facsimile to the attorney for First Acceptance. Forty-one days later, counsel for An and Hong would assert that those two June 2, 2009 letters had constituted an offer to settle their claims and had set a 30-day deadline for a response. The first faxed letter of June 2, 2009, acknowledged the earlier communication from First Acceptance's counsel expressing the company's interest in arranging a settlement conference and stated that An and Hong were "interested in having their claims resolved within your insured's policy limits, and in attending a settlement conference[.]" The first letter then expressly referenced the attached second letter, stating "I have attached my letter of representation and insurance information request for your use." The first letter also informed First Acceptance that An and Hong had uninsured/underinsured motorist ("UM") coverage in the amounts of $100,000 per person and $300,000 per accident. The first letter then provided:

3

Of course, the exact amount of UM benefits available to my clients depends upon the amount paid to them from the available liability coverage. Once that is determined, a release of your insured from all personal liability except to the extent other insurance coverage is available will be necessary in order to preserve my clients' rights to recover under the UM coverage and any other insurance policies. In fact, if you would rather settle within your insured's policy limits now, you can do that by providing that release document with all the insurance information as requested in the attached, along with your insured's available bodily injury liability insurance proceeds.

The second letter of June 2, 2009, as expressly referenced by the first letter, requested that First Acceptance provide the insurance information within 30 days, including a corporate officer's statement under oath concerning policy and coverage details and a copy of each known policy. That second letter further stated that "[a]ny settlement will be conditioned upon [the] receipt of all the requested insurance information."

Counsel for First Acceptance received and reviewed the faxed letters from An and Hong's attorney. On July 10, 2009, counsel for An and Hong filed a personal injury action against the estate of Jackson. On July 13, 2009, counsel for An and Hong sent another letter by facsimile to counsel for First Acceptance, stating that the offer to settle in the June 2, 2009 letters was withdrawn.

I have not heard from you in response to my letter dated June 2, 2009, when I wrote to you about my clients' interest in resolving their claims

4

within the policy limits of First Acceptance's insured. As you know from my letter, my clients offered to release the insured from all personal liability if I received within 30 days: 1) the described release, 2) a check for the available bodily injury liability insurance proceeds, and 3) the requested insurance information. . . . It has now been 41 days since my letter, and I have received nothing from you or First Acceptance. . . . Under the circumstances, my clients authorized me to file a lawsuit on their behalf. . . . Please advise your client that the offer to settle my clients' claims has been revoked and we will move forward with litigation.

On July 17, 2009, counsel for First Acceptance sent a letter by facsimile to First Acceptance, stating that the June 2, 2009 letters from counsel for An and Hong "had been inadvertently placed with some medical records and no follow-up had occurred." On July 20, 2009, counsel for First Acceptance responded to counsel for An and Hong, informing him that a settlement conference with all potential claimants would be scheduled within two weeks. On July 30, 2009, counsel for First Acceptance sent notice to the parties that a settlement conference had been scheduled for September 1, 2009. Counsel for An and Hong did not participate in the settlement conference.

On January 18, 2010, First Acceptance offered to settle Hong's claims for $25,000, but counsel for Hong rejected the offer. First Acceptance later offered to settle both An and Hong's claims for $50,000, but counsel for An and Hong rejected

that offer on October 1, 2010. The lawsuit then proceeded to a jury trial in July 2012, after which final judgment was entered in favor of An and Hong, including an award of $5,334,220 for Hong's injuries.

In June 2014, Robert Hughes, as administrator of Jackson's estate, filed the instant action against First Acceptance, claiming that First Acceptance had negligently or in bad faith failed to settle Hong's insurance claim. The complaint alleged that First Acceptance had tendered only $25,000 as payment toward the Hong judgment and thus sought to recover the unpaid portion of the judgment in the amount of $5,309,225. The complaint also sought punitive damages and attorney fees. The parties filed opposing motions for summary judgment. After a hearing, the trial court denied Hughes' motion, but granted summary judgment to First Acceptance on all of Hughes' claims. Hughes appeals.

2. *Grant of summary judgment to defendant.*

Hughes asserts that the trial court erred in granting summary judgment to First Acceptance on the claims for failure to settle, punitive damages, and attorney fees. We agree as to the failure to settle claim, but disagree as to the punitive damages and attorney fees claims.

(a) *Negligent or bad faith failure to settle.*

6

"An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684 (1) (580 SE2d 519) (2003) (citation omitted). "In deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured." *Southern General Ins. Co. v. Holt*, 262 Ga. 267, 268 (1) (416 SE2d 274) (1992) (citation omitted). "Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk." *Cotton States*, supra at 685 (1) (citation omitted). As for bad faith, "the general rule [is] that the issue of an insurer's bad faith depends on whether the insurance company acted reasonably in responding to a settlement offer." Id. (citation omitted). But

> whether the basis for imposing tort liability on the insurer is phrased in terms of bad faith or negligence, an insurer may be liable for damages for failing to settle for the policy limits if, but only if, such ordinarily prudent insurer would consider that choosing to try the case rather than accept an offer to settle within the policy limits would be taking an unreasonable risk that the insured would be subjected to a judgment in excess of the policy limits. This is generally a jury issue requiring consideration of all the relevant circumstances including the insurer's knowledge of facts relevant to liability and damages on the claim; the insurer's diligence in conducting a reasonable investigation to discover

7

the relevant facts; and the terms of the settlement offer and any response by the insurer.

*Baker v. Huff*, 323 Ga. App. 357, 363-364 (1) (a) (747 SE2d 1) (2013) (citations and punctuation omitted).

In the instant case, we first note that "[i]t is well settled that notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client." *Kahn v. Britt*, 330 Ga. App. 377, 381 (2) (b) (765 SE2d 446) (2014) (citation omitted). Thus, First Acceptance had knowledge of the June 2, 2009 letters from counsel for An and Hong through its own attorney's knowledge of those letters. It is apparent from a review of those letters that they, at the very least, create genuine issues of material fact as to whether Hong offered to settle her claims within the insured's policy limits and to release the insured from further liability, and whether the offer included a 30-day deadline for a response. Likewise, it is clear from a review of the record that there also exist genuine issues of material fact as to whether First Acceptance acted reasonably in responding to any such offer. "An insurer must act reasonably in responding to a settlement offer, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests in avoiding liability for a judgment in excess of the policy limits the same consideration that it

8

gives its own interests in paying less than the policy limits." *Baker*, supra at 363 (1) (a) (citation and punctuation omitted).

In granting summary judgment to First Acceptance on the failure to settle claim, the trial court concluded that because Hong was not the only potential claimant injured in the accident, "summary judgment [was] appropriate because there is no evidence of record the insurer knew or reasonably should have known the complex claims against Mr. Jackson could have been settled within the available policy limits." However, the trial court's focus on whether or not First Acceptance knew that all of the potential claims against Jackson could have been settled within the policy limits was misplaced since "a liability insurer may, in good faith and without notification to others, settle part of multiple claims against its insured even though such settlements deplete or exhaust the policy limits so that remaining claimants have no recourse against the insurer." *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231 (1) (501 SE2d 589) (1998) (citation and punctuation omitted). Thus, there exist genuine issues of material fact as to whether First Acceptance could have settled only Hong's claim within the purported 30-day time limit set by the settlement offer. The possibility of settling other claims within the policy limits and the insurer's knowledge of such possibility are not dispositive of the failure to settle claim in this

9

case. Rather, those are simply other factors that a jury could consider in determining the ultimate question of whether First Acceptance acted reasonably in response to any offer from Hong to settle within the policy limits as "judged by the standard of the ordinarily prudent insurer." *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 190 (686 SE2d 93) (2009) (citation and punctuation omitted). "The jury generally must decide whether the insurer, in view of the existing circumstances, has accorded the insured the same faithful consideration it gives its own interest." *Southern General*, supra at 268-269 (1) (citation and punctuation omitted). Because the circumstances in this case create genuine issues of material fact, the trial court erred in granting summary judgment on this claim.

(b) *Punitive damages and attorney fees.*

The trial court granted summary judgment on the punitive damages and attorney fees claims on the basis that such claims were derivative of the underlying failure to settle claim and they therefore could not survive after the grant of summary judgment on that underlying claim. See *Johnson v. Johnson*, 323 Ga. App. 836, 842 (747 SE2d 518) (2013). However, given our reversal of the grant of summary judgment on the underlying failure to settle claim, the trial court's basis for granting summary judgment on the punitive damages and attorney fees claims no longer exists.

10

Summary judgment on those issues is nevertheless warranted. "We will affirm the grant of summary judgment if it is right for any reason." *Rabun v. Rabun*, 341 Ga. App. 878, 880 (802 SE2d 296) (2017) (citation omitted). Under OCGA § 13-6-11, attorney fees are available where the defendant has acted in bad faith. And under OCGA § 51-12-5.1 (b), "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Generally, such questions of bad faith supporting an award of attorney fees and wilful or wanton conduct supporting an award of punitive damages are matters for a jury's consideration. See *Weller v. Blake*, 315 Ga. App. 214, 220 (3) (b) (726 SE2d 698) (2012); *Keith v. Beard*, 219 Ga. App. 190, 195 (3) (464 SE2d 633) (1995). However, the trial court may grant summary judgment where there is no evidence to support such claims. See *Layer v. Clipper Petroleum*, 319 Ga. App. 410, 420 (7) (735 SE2d 65) (2012); *Howard v. Alamo Corp.*, 216 Ga. App. 525 (455 SE2d 308) (1995).

Here, although Hughes' enumeration of error references the granting of summary judgment on the claims of attorney fees and punitive damages, he has not

11

made any argument, cited any legal authority, or pointed to any evidence concerning the attorney fees claim. Accordingly, to the extent that enumeration of error relates to the summary judgment ruling on attorney fees, it is deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Murphy v. Freeman*, 337 Ga. App. 221, 223-24 (1) (787 SE2d 755) (2016) (enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned); *EZ Green Assocs. v. Georgia-Pacific Corp.*, 331 Ga. App. 183, 190 (3) (770 SE2d 273) (2015).

Hughes' sole argument in support of this enumeration of error pertains to the summary judgment ruling on the punitive damages claims. That argument cites no evidence in the record and instead relies on the conclusory statement that a fact-finder could conclude that the insurer acted with conscious indifference to the consequences. First Acceptance has discharged its burden on summary judgment of pointing to the absence of any evidence of the type of wilful or wanton conduct which would support a claim of punitive damages; however, Hughes has failed to carry his burden of then pointing to specific evidence in the record giving rise to a triable issue on this claim. See *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). Because Hughes has failed to point to specific evidence supporting his claim for punitive damages, we must affirm the trial court's summary judgment ruling on

12

that claim. See *Howard*, supra (under OCGA § 51-12-5.1(b), something more than the mere commission of a tort is required for the imposition of punitive damages and mere negligence will not authorize the recovery of punitive damages).

3. *Denial of summary judgment to plaintiff.*

Hughes argues that the trial court erred in denying his motion for summary judgment on the failure to settle claim because First Acceptance's failure to respond to the June 2, 2009 letters entitles Hughes to judgment as a matter of law. The argument is without merit.

In support of his argument, Hughes relies on *Southern General*, supra at 269 (1) in which the Supreme Court stated:

> We reject [the insurer's] argument that an insurance company has no duty to its insured to respond to a deadline to settle a claim within policy limits *when the company has knowledge of clear liability and special damages exceeding the policy limits*. Rather, the issue is whether all the facts show sufficient evidence to withstand an insurance company's motion for directed verdict and permit a jury to determine whether the insurer acted unreasonably in declining to accept a time-limited settlement offer.

(Emphasis in original). Contrary to Hughes' argument, the emphasized language above does not mandate that he is entitled to judgment as a matter of law; rather, the entirety of the Court's language reiterates that the controlling issue is whether all of

13

the evidence creates a jury question as to whether the insurer acted reasonably in rejecting a time-limited settlement offer. Moreover, in *Southern General*, the Supreme Court expressly provided:

> An insurance company does not act in bad faith solely because it fails to accept a settlement offer within the deadline set by the injured person's attorney. . . . Nothing in this decision is intended to lay down a rule of law that would mean that a plaintiff's attorney under similar circumstances could set up an insurer for an excess judgment merely by offering to settle within the policy limits and by imposing an unreasonably short time within which the offer would remain open.

*Southern General*, supra (citation omitted).

In the instant case, as previously discussed, the evidence of record creates genuine issues of material fact as to whether there was a time-limited settlement offer and whether First Acceptance acted reasonably in responding to any such offer as judged under the standard of the ordinarily prudent insurer. Accordingly, the trial court correctly denied summary judgment to Hughes on his failure to settle claim.

*Judgment affirmed in part and reversed in part. Branch and Bethel, JJ., concur.*