305 Ga. 489
FINAL COPY

S18G0517. FIRST ACCEPTANCE INSURANCE COMPANY OF GEORGIA, INC. v. HUGHES.

ELLINGTON, Justice.

We granted certiorari in this case, *Hughes v. First Acceptance Ins. Co. of Ga.*, 343 Ga. App. 693 (808 SE2d 103) (2017), to review whether the Court of Appeals erred in reversing the grant of summary judgment to the insurer on the insured's failure-to-settle claim. We also asked the parties to address whether an insurer's duty to settle arises only when the injured party presents a valid offer to settle within the insured's policy limits or whether, even absent such an offer, a duty arises when the insurer knows or reasonably should know that settlement within the insured's policy limits is possible. As to this threshold issue, we conclude that an insurer's duty to settle arises only when the injured party presents a valid offer to settle within the insured's policy limits. Applying the applicable rules of contract construction to correspondence from two injured parties in the instant case, we conclude that the injured parties presented to the

insurer a valid offer to settle within the insured's policy limits but that the offer did not include any deadline for accepting the offer. Based on the undisputed evidence, we conclude as a matter of law that the insurer did not act unreasonably in failing to accept the offer before it was withdrawn by the injured parties. As the insurer was entitled to summary judgment, we reverse the decision of the Court of Appeals.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.

*Peterson v. Peterson*, 303 Ga. 211, 213 (1) (811 SE2d 309) (2018) (citation and punctuation omitted).

So viewed, the evidence shows that, on August 29, 2008, Ronald Jackson caused a multi-vehicle collision; he later died from his injuries. At the time of the collision, Jackson was insured by an automobile policy issued by First Acceptance Insurance Company of Georgia, Inc., with bodily injury liability limits of $25,000 per person and $50,000 per accident.

First Acceptance was advised after the collision that Julie An and her

2

minor daughter, Jina Hong, had been injured. Hong sustained a fractured skull, bleeding on the brain, and was in a coma for four to five days, and An suffered a neck injury and her arm was permanently scarred. First Acceptance was also advised that Catherine Bishop had suffered head, neck, and back injuries, that Chris Bishop had suffered soft tissue injuries, and that Jose Rodriguez had suffered neck and back injuries.[1] First Acceptance adjusters determined that its policy provided coverage to Jackson for the collision, and they assessed early in their investigation that Jackson was liable for the loss and that his exposure for claims exceeded the policy limits.

In late September 2008, First Acceptance retained counsel to help resolve the five known injury claims and, hopefully, "reach a global settlement." On November 14, 2008, First Acceptance received Rodriguez's attorney's demand to settle his client's claims in exchange for payment of all available policy limits within 20 business days of receipt of the demand. Rodriguez later agreed to extend the time to respond to his settlement demand "in lieu of completing a global settlement conference." On January 15, 2009, First Acceptance's counsel sent a letter to the attorneys for the multiple claimants to inform them of First

---

[1] Glen Porter's car also was struck in the collision, but he reported that he was not injured.

3

Acceptance's "interest[ ] in arranging a joint settlement conference/mediation in an effort to resolve these claims." First Acceptance's counsel sent another letter to claimants' counsel, on February 2, 2009, reporting that Rodriguez was agreeable to a joint settlement conference.

On June 2, 2009, An and Hong's counsel sent two letters (the "June 2 Letters") by facsimile to counsel for First Acceptance. As more fully set forth in Division 2, infra, An and Hong's counsel stated his clients' interest in attending a settlement conference, and, in the alternative, offered to settle their claims for the available policy limits.

First Acceptance's attorney received and reviewed the June 2 Letters, which, he testified, he did not then construe as "any kind of time limit demand," after which the letters were inadvertently filed with some medical records. On July 10, 2009, An and Hong filed a complaint in the State Court of DeKalb County seeking damages arising out of the August 29, 2008 automobile collision. Shortly after filing the complaint, An and Hong's attorney sent a letter by facsimile to First Acceptance's attorney on July 13, 2009, in which, after noting that "[i]t has now been 41 days since [he sent his] letter, and [he] had received nothing," he advised that the offer to settle his clients' claims had been revoked. First Acceptance's attorney responded to An and Hong's attorney on

4

July 20, 2009, and invited him and his clients to attend a settlement conference with the other claimants. He then scheduled the settlement conference for September 1, 2009, and, on July 30, 2009, notified An and Hong's attorney of the scheduled date. An and Hong's attorney declined to attend the conference.

On February 19, 2010, First Acceptance offered to settle Hong's claim for $25,000. On September 24, 2010, First Acceptance offered to settle An's and Hong's claims for $25,000 each, which equaled the $50,000 policy limit. The offers were rejected. In a July 2012 trial, the jury returned a verdict in favor of An and Hong. The trial court entered judgment in favor of An and Hong and against the then-administrator of Jackson's estate, including an award of over $5.3 million for Hong's injuries.

Robert W. Hughes, Jr., as administrator of Jackson's estate, filed this suit against First Acceptance in June 2014, alleging negligence and bad faith in First Acceptance's failure to settle Hong's claim within the policy limits. Hughes sought to recover $5,309,220.25, the amount of the judgment attributable to Hong's injuries which remained unpaid, as well as punitive damages and attorney fees. First Acceptance moved for summary judgment, and Hughes moved for partial summary judgment on the issues of liability and compensatory damages.

The trial court denied Hughes's motion for summary judgment and granted First Acceptance's motion for summary judgment on all claims. Hughes appealed, and the Court of Appeals reversed the grant of summary judgment to First Acceptance on Hughes's failure-to-settle claim. *Hughes*, 343 Ga. App. at 696-698 (2) (a). We granted First Acceptance's petition for certiorari.

1. We asked the parties to address whether an insurer's duty to settle arises when it knows or reasonably should know settlement with an injured party within the insured's policy limits is possible or only when the injured party presents a valid offer to settle within the insured's policy limits.

"An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684 (1) (580 SE2d 519) (2003) (footnote omitted). An "insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk. *The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy*." Id. at 685 (1) (footnote omitted; emphasis supplied). An insurance company's "bad faith in refusing to settle depends on whether the insurance company acted reasonably *in*

6

*responding to a settlement offer*, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests the same consideration that it gives its own." *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 190 (686 SE2d 93) (2009) (citation and punctuation omitted; emphasis supplied). Generally, it is for the jury to "decide whether the insurer, in view of the existing circumstances, has accorded the insured the same faithful consideration it gives its own interest." *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268-269 (1) (416 SE2d 274) (1992) (citation and punctuation omitted).

To the extent that this Court's decisions have been deemed to be unclear,[2] we take this opportunity to clarify that an insurer's duty to settle arises when the injured party presents a valid offer to settle within the insured's policy limits.[3]

---

[2] See, e.g., *Kingsley v. State Farm Mut. Auto. Ins. Co.*, 353 FSupp.2d 1242, 1249 (II) (B) (2) (N.D. Ga. 2005) (Georgia law "is unsettled whether a plaintiff must make a policy-limits demand for an insurer to be held liable for a tortious refusal to settle.").

[3] There are sound policy reasons for this limitation. As observed by the United States Court of Appeals for the Eleventh Circuit:

> [I]f an offer within the policy limits is not a prerequisite to a tortious failure to settle suit, each insured will attempt to prove an essential element of his case    that the insurer could have settled the case within the policy limits    by introducing the after-the-fact testimony of the injured party that he would have settled within the policy limits if the insurer had offered the limits or had engaged in aggressive settlement negotiations. This testimony    what the injured party would have done had the facts been different    would be unreliable because it is speculative. In addition, this testimony, in a number of cases, might be the result of collusion between the insured and the injured party, and would therefore also be unreliable because it would be self-serving.

*Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F2d 1536, 1553 (III) (A) (5) (11th Cir.

7

Accordingly, the question is whether An and Hong made a valid offer that First

Acceptance failed to accept negligently or in bad faith.[4]

2.  In its opinion, the Court of Appeals concluded:

> It is apparent from a review of [the June 2 Letters] that they,
> at the very least, create genuine issues of material fact as to whether
> Hong offered to settle her claims within the insured's policy limits
> and to release the insured from further liability, and whether the
> offer included a 30-day deadline for a response.

*Hughes*, 343 Ga. App. at 697 (2) (a).

The interpretation of an offer, however, is an issue of law for a court. See

*Weill v. Brown*, 197 Ga. 328, 332 (29 SE2d 54) (1944) (a court determines "just

what [an offer] means," and, if an offer is too indefinite for a court to so

determine, there can be no assent thereto); *Herring v. Dunning*, 213 Ga. App.

695, 697 (446 SE2d 199) (1994) (a court decides the meaning of a settlement

offer). Hughes concedes that the questions of whether the June 2 Letters made

an "offer," and the interpretation of that offer's terms, present legal issues.

1991).

[4] *Thomas v. Atlanta Cas. Co.*, 253 Ga. App. 199 (558 SE2d 432) (2001), and *Alexander Underwriters General Agency v. Lovett*, 182 Ga. App. 769 (357 SE2d 258) (1987), are disapproved to the extent that they are inconsistent with this opinion.

8

In determining the meaning of contractual language contained in an offer, a court may apply the applicable rules of contract construction. See *H&E Innovation v. Shinhan Bank America*, 343 Ga. App. 881, 885 (1) (808 SE2d 258) (2017) (construing settlement agreement, the terms of which were set forth in offer of settlement, by application of the rules of contract construction); *Grange Mut. Cas. Co. v. Woodard*, 861 F3d 1224, 1231 (IV) (11th Cir. 2017) (looking to Georgia's rules of contract construction to determine whether settlement offer letter made timely payment an element of acceptance). Contractual language that is "plain, unambiguous, and capable of only one reasonable interpretation" must be afforded its literal meaning. *First Data POS v. Willis*, 273 Ga. 792, 794 (2) (546 SE2d 781) (2001). However, if contractual language is ambiguous in some respect, the court applies the rules of construction to resolve the ambiguity. *Borders v. City of Atlanta*, 298 Ga. 188, 196 (II) (779 SE2d 279) (2015). "Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." *Cahill v. United States*, 303 Ga. 148, 150 (810 SE2d

9

480) (2018) (citation and punctuation omitted). A jury may be required to resolve the meaning of ambiguous language, but only if an ambiguity remains after the court applies the rules of construction. See id. at 150-151; *Borders v. City of Atlanta*, 298 Ga. at 196 (II). With these principles in mind, we turn to the June 2 Letters.

The June 2 Letters, following the facsimile cover page, constitute a two-page letter from An and Hong's attorney addressed to First Acceptance's attorney, followed by an uninsured motorist policy declaration page, followed by a second two-page letter from An and Hong's attorney addressed to First Acceptance's attorney. The attorney begins the first letter by acknowledging the receipt of the January 15, 2009 letter to him and the other claimants' attorneys expressing First Acceptance's interest in arranging a joint settlement conference. The attorney represents that his clients "are interested in having their claims resolved within [First Acceptance's] insured's policy limits, and in attending a settlement conference if you think it would be helpful." In following paragraphs, the attorney says that he and his clients "are happy to attend" a settlement conference, requests that First Acceptance's attorney forward "some dates that would work for everyone to meet," suggests a location for the conference, and

10

volunteers to "take the lead on reserving some meeting space" and to provide a list of suggested mediators.

After referencing his client's uninsured motorists policy (UM) limits, the attorney states:

> Of course, the exact amount of UM benefits available to my clients depends upon the amount paid to them from the available liability coverage. Once that is determined, a release of your insured from all personal liability except to the extent other insurance coverage is available will be necessary in order to preserve my clients' rights to recover under the UM coverage and any other insurance policies. In fact, if you would rather settle within your insured's policy limits now, you can do that by providing that release document with all the insurance information as requested in the attached, along with your insured's available bodily injury liability insurance proceeds.

The second letter states, in pertinent part, that "[w]e hereby request that [First Acceptance] provide, within thirty days of the date of this letter," certain insurance information. The letter asks First Acceptance to amend that information upon the discovery of facts inconsistent with or in addition to that provided. The correspondence then states: "Any settlement will be conditioned upon [the attorney's] receipt of all the requested insurance information."

For the most part, the meaning of the June 2 Letters is clear. An and Hong, through their attorney, express a willingness to participate in the proposed

11

settlement conference with other claimants. Alternatively, they express their willingness to settle their claims upon receipt of three items: (1) a release of the insured from all personal liability except to the extent other insurance coverage is available, (2) the requested insurance information, and (3) the insured's available bodily injury liability insurance proceeds. The offer to settle is not, at least expressly, subject to a time limit for acceptance. Nor do An and Hong state an express time limit on their willingness to attend the settlement conference.

Hughes nevertheless contends that First Acceptance "failed to respond to the offer within the 30-day deadline." First Acceptance contends, among other things, that the June 2 Letters did not constitute a time-limited offer. The offer at issue is expressly subject to First Acceptance's provision of "all the insurance information as requested in the attached." The phrase "as requested" could simply refer to the insurance information. Under that interpretation of the offer, if First Acceptance submitted all the insurance information requested in the second letter, it would have satisfied the condition. On the other hand, "as requested" could mean in the manner requested in the second letter, which includes a request that the insurance information be submitted within 30 days of the date of that letter.

12

The most reasonable construction of the June 2 Letters, when considered as a whole, is that they do not include a 30-day deadline for acceptance of the offer to settle. The offer to settle for available policy limits was presented as an alternative to An and Hong's participation in the proposed global settlement conference. There was then no time set for the settlement conference, nor did the June 2 Letters state any time limitation on An and Hong's willingness to attend the conference or set any express deadline to settle beforehand. The second letter's request that the insurance information be amended is not logically consistent with a requirement that acceptance of the settlement offer must occur within 30 days. Moreover, if an agreement "is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer. OCGA § 13-2-2 (5)." *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990) (citation and punctuation omitted). See *Envision Printing v. Evans*, 336 Ga. App. 635, 639 (1) (786 SE2d 250) (2016) (same); *Stewart v. Finance Co. of the South*, 49 Ga. App. 462 (176 SE 73) (1934) (any ambiguities in offer letter should be construed against the drafter).

We conclude that, through the June 2 Letters, An and Hong offered to settle their claims within the insured's available policy limits and to release the

13

insured from further liability, except to the extent other insurance coverage was available, but that the offer did not include a 30-day deadline for acceptance.[5]

If an instrument containing an offer "is silent as to the time given for acceptance, the offer will be construed to remain open for a reasonable time." *Simpson & Harper v. Sanders & Jenkins*, 130 Ga. 265, 271 (60 SE 541) (1908) (citations omitted). See also *Prior v. Hilton & Dodge Lumber Co.*, 141 Ga. 117, 118 (1) (80 SE 559) (1913) ("If no time is prescribed for accepting an offer, it must be done within a reasonable time.") (citations omitted);[6] *Wilkins v. Butler*, 187 Ga. App. 84, 84 (369 SE2d 267) (1988) (same).

---

[5] Although not applicable to the bodily injury claim at issue here, which arose in 2008, OCGA § 9-11-67.1, adopted in 2013, provides that "[p]rior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing," and contain certain material terms. These terms include "[t]he time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer[.]" OCGA § 9-11-67.1 (a) (1). This Code section applies to "causes of action for personal injury, bodily injury, and death arising from the use of a motor vehicle on or after July 1, 2013." OCGA § 9-11-67.1 (h).

[6] We also explained in *Prior* that, "[i]f without consideration a continuing offer is made, although the person making it may state a time within which it may be accepted, there is no binding contract, and he may withdraw the offer before acceptance. . . . A mere offer or proposition, until accepted, may be withdrawn. If it is accepted before it is withdrawn or terminated, a contract then results." *Prior*, 141 Ga. at 118 (1). See OCGA § 13-3-2 ("The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition.").

14

It follows that First Acceptance was entitled to summary judgment on Hughes's failure-to-settle claim. As An and Hong's offer was not a time-limited settlement demand, First Acceptance was not put on notice that its failure to accept the offer within any specific period would constitute a refusal of the offer. And given, especially, that the June 2 Letters communicated an unequivocal desire on the part of An and Hong to attend the proposed settlement conference, First Acceptance could not have reasonably known that it needed to respond within 41 days or risk that its insured would be subject to a judgment in excess of the policy limits on account of An's and Hong's claims.

Hughes argues that First Acceptance knew or should have known that Hong's claim, in particular, was by far the most severe of the multiple bodily injury liability claims facing its insured, and that the evidence showed insurance industry custom and practice required First Acceptance to resolve the most serious claim so as to limit its insured's exposure.[7]  And, Hughes points out, the Court of Appeals has previously held that "a liability insurer may, in good faith

[7] According to the deposition testimony of Peter J. Hildebrand, a claims and insurance professional, "custom and practice in the [insurance] industry in Georgia . . . is that, if it's so clear that you have excess exposures that cannot be resolved by your limits, . . . you go about addressing the worst exposures and trying to settle those[.]" However, Hildebrand clarified, it was "certainly better" to settle all claims, if that was reasonably possible.

15

and without notification to others, settle part of multiple claims against its insured even though such settlements deplete or exhaust the policy limits so that remaining claimants have no recourse against the insurer." *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231, 231 (1) (501 SE2d 589) (1998) (citation and punctuation omitted).[8] It follows, Hughes maintains, that a jury should consider whether First Acceptance was acting as an ordinarily prudent insurer in failing to simply accept an offer that would eliminate the most serious claim facing its insured. We disagree. *Miller* does not require that an insurer settle part of multiple claims. A settlement of multiple claims that included Hong's claim was in the insured's best interest as it would reduce the overall risk of excess exposure, and An and Hong had expressed their interest in attending a settlement conference with the other claimants. First Acceptance's failure to promptly accept An and Hong's offer was reasonable as an ordinarily prudent insurer could not be expected to anticipate that, having specified no

---

[8] The Court of Appeals reasoned that "a contrary rule would put insurers at risk of being liable to remaining claimants for amounts above the coverage limits, which would necessarily result in a general policy by insurers of paying claims only after they were reduced to judgment, and would discourage the sound public policy of encouraging settlements." *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. at 231 (1) (citations omitted). Accord *Allstate Ins. Co. v. Evans*, 200 Ga. App. 713, 714-715 (409 SE2d 273) (1991).

16

deadline for the acceptance of their offer, An and Hong would abruptly withdraw their offer and refuse to participate in the settlement conference.

First Acceptance was entitled to summary judgment in its favor, and the Court of Appeals erred when it reversed the trial court's grant of that motion.

Judgment reversed.   Melton, C. J., Nahmias, P. J., Benham, Blackwell, Boggs, Warren, JJ., and Judge Geronda V. Carter, concur.  Peterson, J., not participating.  Bethel, J., disqualified.

Decided March 11, 2019.

Certiorari to the Court of Appeals of Georgia — 343 Ga. App. 693.

Dentons US, John S. Berry, Robin N. Johnson; Alston & Bird, Kyle G. A. Wallace, Cari K. Dawson, Andrew J. Tuck, for appellant.

Swope Rodante, Brandon G. Cathey, Brent G. Steinberg, for appellee.

Swift, Currie, McGhee & Hiers, David M. Atkinson, Jonathan J. Kandel, Pamela N. Lee; Ellis Painter Ratterree & Adams, Sarah B. Akins; Hawkins Parnell Thackston & Young, Martin A. Levinson; Drew Eckl & Farnham, Garret W. Meader, Hall F. McKinley III; James Bates Brannan Groover, Duke R. Groover, Lee M. Gillis, Jr., Rachel R. Turnbull; Smith, Gambrell & Russell, Leah Ward Sears, Edward H. Wasmuth, Jr.; Bryan Cave Leighton Paisner, William V. Custer IV, Christian J. Bromley; Ean K. Cullefer; Ugwonali Law Group, Adanna U. Ugwonali, amici curiae.