**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**January 13, 2023**

# In the Court of Appeals of Georgia

A22A1460. SIMMONS v. BATES et al.

HODGES, Judge.

This case involves a dispute over a time-limited settlement demand pursuant to the then-effective OCGA § 9-11-67.1[1] following a motor vehicle collision between Deborah E. Bates ("Deborah") and Judy Simmons which resulted in Deborah's death. Jimmy Bates, Deborah's surviving spouse, and Donna K. Martin, Administrator of Deborah's Estate (collectively "Bates"), extended an offer to settle their claims against Simmons. The parties dispute whether there was a valid acceptance of this offer such that there is a binding settlement agreement. The trial court denied

---

[1] The statute has since been amended, but our analysis is governed by the prior version.

Simmons' motion to enforce settlement, and this appeal followed after this Court granted of Simmons' interlocutory application. For the following reasons, we affirm.

> We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citation omitted.) *White v. Cheek*, 360 Ga. App. 557, 557-558 (859 SE2d 104) (2021).

So viewed, the record shows that on July 27, 2018, Simmons allegedly ran a stop sign and struck another car, which resulted in severe and ultimately fatal injuries to Deborah. Simmons, who was allegedly the at-fault driver, had insurance policies through two companies, Progressive Premier Insurance Company and ACCC Insurance Company. On June 20, 2019, attorneys for Bates sent an offer of compromise letter to Progressive and ACCC in accordance with OCGA § 9-11-67.1 (the "First Offer"). The First Offer was 39 pages long and contained 30 footnotes. It

2

stated that it was a contingent offer which only obligated Bates to settle if the offer was unequivocally accepted by both ACCC and Progressive. ACCC never received, and thus never accepted, the First Offer.

The First Offer required acceptance of the agreement unequivocally and without variance. The letter was split into two sections, with the first being directed to ACCC and the second being directed to Progressive. On page 22 of the letter, the material terms for Progressive were listed as follows:

> 1. The time period within which the material terms pursuant to OCGA § 9-11-67.1(a) must be accepted is **thirty-six (36) days** from your receipt of this offer;
>
> 2. The amount of monetary payment is **Progressive's bodily injury policy limit of $100,000;**
>
> 3. The party that our clients will release pursuant to this section 2 of this offer of compromise is Judy Simmons;
>
> 4. The type of release that our clients will provide is a General Release that releases "all claims of Jimmy Bates for the wrongful death of Deborah Bates and all claims of Donna Kay Martin as the Administrator of the Estate of Deborah E. Bates for the pain and suffering and the funeral, medical, and other necessary expenses resulting from the injury and death of Deborah Bates[,]" and our clients will not release Judy

Simmons from any other claims of any other kind or description. Our clients will not release any other individuals or entities pursuant to this section 2 of this offer of compromise not identified in this Paragraph 4 or Paragraph 3 of this section 2 above from any claims of any kind or description. Our clients specifically reserve the right to pursue any and all valid claims that currently exist against any other individuals and/or entities to the extent any such valid claims currently exist; and 5. The claims to be released pursuant to a General Release are "all claims of Jimmy Bates for the wrongful death of Deborah Bates and all claims of Donna Kay Martin as the Administrator of the Estate of Deborah E. Bates for the pain and suffering and the funeral, medical, and other necessary expenses resulting from the injury and death of Deborah Bates." Our clients will not release any claims pursuant to this section 2 of this offer of compromise other than as identified and described in this Paragraph 5 and Paragraph 4 of this section 2 above, nor will our clients release any individuals or entities pursuant to this section 2 of this offer of compromise other than as identified in Paragraph 3 of this section 2 and Paragraph 4 of this section 2 above. Our clients specifically reserve the right to pursue any and all valid claims that currently exist against any other individuals and/or entities to the extent any such valid claims currently exist. (Emphasis in original.)

The First Offer provided that compliance with the material terms in their entirety was not sufficient to constitute acceptance and that performance of certain acts was required to create a binding settlement. The acts required were: (1) payment

of policy limits by a date certain; (2) execution of an affidavit by Simmons that there was no other insurance available to her that could pertain to this claim; (3) that all communications regarding the offer be made in writing; (4) and that Progressive draft a release that complied with every term and condition of the First Offer, including the footnotes. In footnote 20 of the First Offer, Simmons and Progressive were informed:

> The sworn and notarized statement that there is no other insurance is part of the consideration for this offer of compromise and is material to this offer of compromise. If you include any language in the release you send to us that directly or indirectly conflicts with, invalidates, or attempts to invalidate the sworn and notarized statement that there is no other insurance or you include any language in the release you send to us that directly or indirectly attempts to exclude the sworn and notarized statement that there is no other insurance from [sic] comprising part of the consideration for this offer of compromise, it will constitute a counteroffer and rejection and result in the immediate, automatic, and permanent withdrawal of this offer of compromise.

Within the description of the acts required for acceptance, the First Offer specifically provided that "*If any condition or requirement is not met by the specified deadline or if any additional terms, conditions, or representations are requested of our clients or included in the release by Progressive, then there has been no acceptance*

5

***and no agreement, and this offer will be immediately and automatically***

***withdrawn***." (Emphasis in original.) The First Offer subsequently stated:

> Please be aware that, under Georgia law, our offer of compromise must be accepted unequivocally and without variance of any sort and that a purported acceptance of this offer of compromise which imposes ***or even requests*** terms, conditions, or representations beyond those contained in this offer will be a counteroffer and rejection. . . . Additionally, *any attempted counteroffer by Progressive will be a rejection of our offer of compromise and will result in the immediate and permanent withdrawal of our offer of compromise.* ***Please be aware that sending a release, settlement check, or any other documentation that includes any terms, conditions, or representations that differ in any way from this offer will be a counteroffer and rejection, resulting in the permanent withdrawal of this offer.***(Emphasis in original)

Progressive sent a letter of acceptance on July 16, 2019, agreeing to all terms. On July 29, 2019, Progressive sent: (1) a check for $100,000; (2) Simmons' affidavit in which she averred she had no other insurance policy under which coverage was available; and (3) a general release for Bates to execute. The general release referred to the underlying incident as "a motor vehicle accident that occurred at the intersection of McDonough Parkway and Bridges Road in Henry County." The release contained a place for a notary signature which stated "On this _____ day of

_____, 2019, personally appeared JIMMY BATES and DONNA KAY MARTIN, to me known to be the people who executed the foregoing instrument and acknowledged that they executed the same as their free act and deed."

Bates refused to follow through on the settlement. Bates wrote "while we appreciate Progressive's offer of compromise, for multiple reasons, we must respectfully decline at this time." The letter explained that their First Offer letter to ACCC Insurance had been returned as undeliverable, and Bates was unwilling to compromise the claim only as to Progressive.

On October 22, 2019, counsel for Bates sent Progressive and ACCC a second offer of settlement letter, which was now 41 pages long (the "Second Offer"). This offer contained much of the same language as the first settlement offer. With regard to the notarized statement, however, the Second Offer included the following:

> If the release you send to us excludes or omits or attempts to exclude or omit the sworn and notarized statement that there is no other insurance from comprising [sic] part of the consideration for this offer of compromise, it will constitute a counteroffer and rejection and will result in the immediate, automatic, and permanent withdrawal of this offer of compromise. Please be aware that we have done everything reasonable to warn you that the release must include language stating that the sworn and notarized statement that there is no other insurance is part of the consideration for the release.

7

Simmons does not argue that she accepted or attempted to accept the Second Offer, and the trial court did not consider it.

On January 23, 2020, Bates filed suit. Simmons then moved to enforce the settlement agreement, asserting she had unequivocally accepted the First Offer. Bates objected, arguing that Simmons' purported acceptance was not identical to the terms of the First Offer, and that the First Offer was contingent on ACCC's acceptance, which did not happen.

The trial court denied the motion to enforce the settlement. Specifically, the trial court found that Simmons had not unequivocally accepted Bates' First Offer because the release "excluded the consideration of the Affidavit or the sworn and notarized statement that there is no other insurance." According to the trial court, although Progressive provided the correct affidavit, the failure to mention the affidavit in the release varied the terms and thus constituted a rejection of the offer. The trial court also found that Simmons included additional language in the release, namely the inclusion of a line for a notary to sign and to indicate that Bates signed the release freely. In light of these findings, the trial court determined that the argument concerning the effect of ACCC's non-acceptance of the First Offer was moot.

1. In two related enumerations of error, Simmons contends that she unequivocally and without variance accepted the First Offer through Progressive's response to it, and thus created a binding settlement agreement. We disagree.

The version of OCGA § 9-11-67.1 (a) - (c) in effect at the time of the First Offer[2] provides:

(a) Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and contain the following material terms: (1) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; (2) Amount of monetary payment; (3) The party or parties the claimant or claimants will release if such offer is accepted; (4) The type of

---

[2] The law was amended in 2021 in a way which will hopefully promote good-faith settlement of claims rather than litigation of both the underlying tort claim and a subsequent bad faith refusal to settle a claim. See, e.g., *Wright v. Nelson*, 358 Ga. App. 871, 876-877 (856 SE2d 421) (2021) (McFadden, J., fully and specially concurring) ("It has become clear that, to a plaintiff whose injuries greatly exceed the available coverage, a policy-limits settlement can be less valuable than a rejected offer and consequent bad-faith claim – however dubious the claim. In the context of proceedings to enforce purported settlements, plaintiffs sometimes structure offers not to reach settlements, but rather to elicit rejections.").

release, if any, the claimant or claimants will provide to each releasee; and (5) The claims to be released.

(b) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

(c) Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to the parties.

Our Court has recently reiterated that

[w]hen interpreting provisions of a statute, such as OCGA § 9-11-67.1, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end. Additionally, all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law. In enacting OCGA § 9-11-67.1, the General Assembly acted against the backdrop of a large body of law on contract formation generally and settlement formation specifically. As part of that existing law, settlement agreements must meet the same

10

requirements of formation and enforceability as other contracts. There is no enforceable settlement between parties absent mutual agreement between them. Accordingly, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. A purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the policy limits. These basic contract law principles find their origin in the common law. *It is also a fundamental principle of contract law that an offeror is the master of his or her offer, and free to set the terms thereof.* This principle also finds its origin in the common law. The common-law rules are still of force and effect in this State, except where they have been changed by express statutory enactment or by necessary implication. Accordingly our Supreme Court has concluded that the plain language of OCGA § 9-11-67.1 does not expressly or by necessary implication contravene these common law principles.

(Citations and punctuation omitted; emphasis supplied.) *White*, 360 Ga. App. at 561-563.

On appeal, Bates contends that there is no binding settlement agreement for four reasons: (1) the First Offer was contingent on both carriers accepting it; (2) Simmons impermissibly denied liability by referring to the collision as an "accident";[3]

---

[3] This argument was not raised in the trial court.

11

(3) the general release was not compliant with the requirements of the First Offer because it failed to reference Simmons' affidavit as part of the consideration; and (4) the general release was not compliant with the requirements of the First Offer because it impermissibly included a line for a notary to execute and state that Bates represented that the execution was done as a "free act and deed."

We find that, regardless of whether Progressive complied with the terms of the First Offer, it was undisputedly not accepted by ACCC, and thus no settlement agreement was reached. This was not the basis for the trial court's ruling, but it was argued by the parties below. We can affirm the trial court's decision in this case because it is right for any reason. See *City Of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied.").

The First Offer was clear that Bates was unwilling to settle with just a single carrier. It is certainly not Progressive's fault that ACCC did not receive the First Offer, and that will be relevant should this case progress to the assertion of a bad faith refusal to settle claim being brought against Progressive. See *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 686 (2) (580 SE2d 519) (2003) ("[W]e conclude that

12

an insurance company faced with a demand involving multiple insurers can create a safe harbor from liability for an insured's bad faith claim . . . by meeting the portion of the demand over which it has control, thus doing what it can to effectuate the settlement of the claims against its insured."). This case, however, does not yet concern Progressive's good faith or lack thereof; it simply concerns whether the parties entered a binding settlement agreement. Our law is clear that Bates was permitted to be the master of the offer regardless of the reasonableness of the offer. We share Simmons' concern that this lengthy and unnecessarily convoluted offer appears to be intentionally difficult to accept; however, nothing in our law can permit this Court to force Bates to settle on terms different from those proposed.[4] In light of this holding, we need not decide whether Progressive's response to the First Offer otherwise fully complied with the offer's terms.

---

[4] Simmons argues that the First Offer was not actually contingent on both carriers accepting because it instructed both carriers to submit a proposed general release. Simmons is correct that two general releases would not actually need to be executed because once Bates executed a general release submitted by either carrier, all claims identified therein would be released against the policies of both carriers. This may be a point of inartful drafting on Bates' part as it may have been better for Bates to require each carrier to provide a limited release as to its own policy or to require the carriers to submit a single unified general release. This detail, however, does not change the fact that the First Offer unequivocally required the policy limits of both carriers to be tendered before Bates would execute any release at all.

13

2. Simmons argues that the First Offer is enforceable because Progressive complied with all elements over which it had control. This argument is irrelevant at this stage of the proceedings.

To support this contention, Simmons relies on *Brightman*, 276 Ga. at 683, but that case does not stand for the proposition that Simmons advances. *Brightman* concerns the ability to bring a claim against an insurance company for bad faith failure to settle within policy limits. It does not concern the enforceability of an offer of settlement, which is the issue before the Court in this case. Simply stated, Simmons' argument is one for another day.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur*.