[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15074

_____

D.C. Docket No. 4:16-cv-00313-CDL

FIFE M. WHITESIDE,

Plaintiff-Appellee,

versus

GEICO INDEMNITY COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 28, 2020)

Before WILSON and GRANT, Circuit Judges, and MARTINEZ,[*] District Judge.

GRANT, Circuit Judge:

_____

[*] Honorable Jose E. Martinez, United States District Court for the Southern District of Florida.

In this bad-faith suit, GEICO has been found liable for rejecting a policy-limits demand against one of its insureds.  The measure of damages in this suit came from an earlier negligence case that GEICO neither knew about nor participated in.  The attorney for the injured party did not notify GEICO about the negligence suit—even though he and the insurance company had been communicating about the injured party's claim.  For her part, GEICO's insured driver thought GEICO was handling the case, so she threw away her summons and complaint, failed to answer either, and decided against notifying GEICO.  The case against her thus went into default, to the tune of $2.9 million.  GEICO now finds itself on the hook for almost 70% of the default judgment entered there.

This case presents at least three novel issues of Georgia law.  *First*, Georgia's notice statute relieves insurers not notified of lawsuits against their insured from "any liability to pay any judgment or other sum on behalf of its insureds."  O.C.G.A. § 33-7-15.  Does that statute, along with a virtually identical insurance policy provision, relieve an unnotified insurer of bad-faith liability for a default excess judgment entered in a case against its insured?  *Second*, if the notice provisions themselves do not bar liability for a bad-faith claim in that context, can an insured sue an insurer for bad faith when, after the insurer refused to settle but before judgment was entered against the insured, the insured lost coverage for failure to comply with those notice provisions?  *And third*, under Georgia's Constitution, does an insurer who had no notice of or participation in an action against its insured have the right to contest the damages awarded in the original suit before that amount can be used as the measure of damages in a follow-on suit

2

for bad faith?  Lacking any clear answers to these questions, we certify them to the Georgia Supreme Court.

## I.

### A.

While driving her friend's Ford Explorer eight years ago, Bonnie Winslett ran into a cyclist named Terry Guthrie.  The cyclist was taken to the hospital for what the accident report called "side and hip pain."  There, he received pain medicine, antibiotic cream and bandages for his wounds, and several X-rays.  His pain kept giving him trouble, though, so the cyclist returned to the hospital for further treatment.

The vehicle that hit the cyclist was insured by GEICO Indemnity Company, the defendant in this suit.  GEICO accepted responsibility for the accident and notified the insured driver in a letter that "we will be handling this injury directly" with the cyclist's attorney.  As far as the record shows, GEICO did not ask the insured driver to forward any accident-related legal documents, even though its claims manual instructs it to do so.  Nor did GEICO inform the insured driver (who was not the policyholder) that she had an obligation to notify GEICO of any lawsuit.

The cyclist's lawyer sent a demand letter to GEICO for the policy limit of $30,000, and the insurance company counteroffered for about $12,000.  Though GEICO received no response to its offer, its claims adjuster continued in her attempts to contact the cyclist's attorney about settlement.  She first followed up on GEICO's offer about a week after it was made, calling the cyclist's attorney and

leaving a voicemail when she got no answer. Nearly a month went by without any word, so the GEICO adjuster called again and left yet another voicemail. After several more weeks of radio silence, the claims adjuster once more called the attorney's office. That time she was told that both the attorney and his paralegal were unavailable. No response ever came.

Neither the cyclist nor his attorney had forgotten about the claim, however. Six days after GEICO's settlement offer, the cyclist filed suit against the driver— without telling the insurance company or responding to its counteroffer. No one else notified GEICO about the suit either. The driver, who as we have said received a summons and complaint, did not notify the insurance company. She called the cyclist's law firm and was instructed by a paralegal to contact GEICO about the lawsuit. Rather than reach out to the insurer, she "wadded" up the legal documentation, "threw it away," and said, "To hell with this shit." She later said that she did not feel the need to notify GEICO because she thought that the company was already handling the case. So the driver never answered the legal filings, never passed them on to GEICO, and never showed up to court.

Two months after the driver was served, the Superior Court of Muscogee County held an hour-long hearing that was neither recorded nor transcribed, and then entered a default judgment of $2.9 million against her. One week later, the cyclist's attorney apparently found GEICO's contact information and informed it of the default judgment. This notice came just after the Superior Court began a new term of court—leaving that court with limited power under Georgia law to set aside the judgment. O.C.G.A. § 15-6-3(8)(D); *Lee v. Rest. Mgmt. Servs.*, 232 Ga.

4

App. 902, 903 (1998).  GEICO stepped in to represent its insured driver, but its efforts to have the judgment set aside were unsuccessful.  *Winslett v. Guthrie*, 326 Ga. App. 747 (2014).

B.

Seeking to collect on the default judgment, the cyclist filed a petition under Chapter 7 to put the driver into involuntary bankruptcy.  When the petition proved successful, the attorney who helped the cyclist file the petition was named the trustee of the driver's estate.  Soon after he was named trustee, the bankruptcy attorney selected the cyclist's negligence attorney to represent the estate in the bad-faith litigation.  So, to summarize, the cyclist's attorney who handled the GEICO negotiation did not respond to the insurance company's settlement request; did not return GEICO's calls; sued the driver over the accident; received a default judgment; and waited to notify GEICO of the lawsuit until after both the default-judgment hearing and the term of court were over.  And then the cyclist's bankruptcy attorney pushed the driver into bankruptcy because the driver could not pay the default judgment; arranged to be named the bankruptcy trustee for the driver that he had just pushed into bankruptcy; and asked the cyclist's first attorney to represent him.

The next step for the attorneys, who now represented both the cyclist and—effectively—the insured driver, was to sue GEICO for bad faith in not accepting the cyclist's original settlement demand.[1]  Notice, or rather the lack of it, took

---

[1] In Georgia, an insurance company that acts negligently or in bad faith in rejecting a time-limited demand to settle a covered claim within the limits of the insurance policy may be liable

5

center stage throughout the bad-faith litigation.  GEICO argued that, under both Georgia's notice statute and its policy's notice provision, it was relieved "of any liability to pay any judgment" because it never received notice of the original suit. *See* O.C.G.A. § 33-7-15(b).  GEICO also argued that it could not be the proximate cause of the default judgment given the driver's decision not to notify it of the lawsuit.  Last, it urged that it would be unfair and unconstitutional to use the default judgment as the measure of damages when GEICO did not have the chance to contest the cyclist's damages in the first lawsuit.

GEICO lost on all three arguments.  Before trial, the district court held that neither the notice statute nor the policy's notice provision relieved GEICO of paying for a tort against its own insured.  That meant that ordinary tort principles would apply; if GEICO were the proximate cause of the default judgment, it would be responsible for paying the damages.  The district court also held that proximate cause was a question of fact: some evidence supported a finding that GEICO caused the default judgment through its failure to pay policy limits to the cyclist and its interactions with the driver; other evidence would put the responsibility on the driver for not notifying GEICO about the lawsuit.  While the first issue was a legal decision (that the notice statute and policy provision did not shield GEICO from liability for the default judgment), the second was a factual one (whether the facts showed that GEICO, the driver, or both were the cause of the default judgment).  The district court also used the amount of the default judgment from

---

for a subsequent judgment against its insured in excess of the policy limits.  *See First Acceptance Ins. Co. of Ga., Inc. v. Hughes*, 305 Ga. 489, 492 (2019).

the original action that exceeded the policy limits—about $2.9 million—as the measure of damages, disagreeing with GEICO's argument that it would violate due process to hold the company liable for damages obtained in a suit that it had no opportunity to defend. The jury found that the driver was 30% liable for the default excess judgment and that GEICO was 70% liable, which left GEICO owing the driver's estate more than $2.7 million after interest was added.

## II.

Under our precedent, "we should certify questions to the state supreme court when we have substantial doubt regarding the status of state law." *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019) (quotation marks omitted). Certifying questions is a useful tool "to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1239 (11th Cir. 2003). Today we ask for the Georgia Supreme Court's help in deciding three questions of Georgia law because, as the district court noted, "no Georgia cases squarely addressing the precise issues in this unique case" have come to light. *See also* O.C.G.A. § 15-2-9(a) (permitting certification where key questions lack "clear controlling precedents").

Our decision is not disturbed by GEICO's waiting for the jury verdict before asking for certification. To be sure, many courts have treated a party's delay in suggesting certification as undermining its request. *See* 17A Charles Alan Wright et al., *Federal Practice and Procedure* § 4248 (3d ed. 1998) (collecting cases). But certification turns much more on federalism concerns than on timeliness

7

concerns.  In fact, a party need not raise the issue at all: "Ordinarily a court will order certification on its own motion," given that it is in the "best position to determine whether it feels confident in its reading of the state law."  *Id.*  Moreover, this Court has repeatedly certified questions even after a jury trial.  *See, e.g.*, *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267 (11th Cir. 2009); *Lowe's Home Ctrs., Inc. v. Gen. Elec. Co.*, 381 F.3d 1091 (11th Cir. 2004).  We now do so again.

### A.

The district court sent this case to the jury on questions of proximate cause. We have no quarrel with the jury's conclusion under the facts as presented to them. But under Georgia law, it may well be that the question never should have gotten to the jury in the first place.  By statute, a Georgia motor vehicle insurance policy must contain a provision that "specifically requires the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy."  O.C.G.A. § 33-7-15(a).  An insured's failure to notify the insurance provider "shall constitute a breach of the insurance contract which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insureds under the policy and of any liability to pay any judgment or other sum on behalf of its insureds."  *Id.* § 33-7-15(b).

That said, the statute has an exception to the notice-from-the-insured requirement.  If an insurance provider is timely notified by *anyone* of a covered lawsuit against its insured, the notice statute will not cut off the provider's liability, regardless of what the insured does.  *See id.* § 33-7-15(c).  Using that provision,

8

someone suing an insured can always guarantee that the notice statute is satisfied simply by sending a copy of a summons to the insurance provider.  But the flip side is also true: if no one tells the insurance company about a lawsuit, the company does not have any liability for the outcome of that suit.  As the Georgia Court of Appeals has said, failure to notify the insurer of a lawsuit "relieves the insurer from any duty to defend and *any liability on any judgment* resulting from the suit."  *Berryhill v. State Farm Fire & Cas. Co.*, 174 Ga. App. 97, 99 (1985) (emphasis added).

Many of the relevant facts are not in dispute here.  For starters, the parties agree that GEICO's policy requires the insured to send any relevant court filings in short order.  They also agree that GEICO received notice from no one—no one, that is, until the cyclist's attorney reached out to GEICO after the default judgment was already entered.  Finally, the parties do not question that GEICO was prejudiced by not having notice.

What the parties dispute is how the notice statute interacts with the tort of bad-faith failure to settle.  On the one hand, the statute's language may be read to cover only a contract claim made by third parties against an insurer rather than a subsequent tort claim made by an insured against the insurance company.  Some of the text might bear this out: the statute says, after all, that failure to notify the insurer "shall constitute a breach of the insurance contract."  O.C.G.A. § 33-7-15(b).  And the statute relieves an unnotified insurer "of its obligation to defend its insureds under the policy" or of paying a judgment "on behalf of its insureds."  *Id.* Here, the lawsuit is brought, effectively, by the insured driver against the insurance

9

company.  That may mean that, although GEICO had no liability "on behalf of its insureds" in the original lawsuit against the driver—because no one provided notice of the suit—liability could still attach in this follow-on lawsuit for bad faith, which was brought by the driver herself against the insurance company for failure to settle within policy limits.[2]

On the other hand, the statute also has some broader language, which might be taken to apply even to a judgment that lays the foundation for a bad-faith tort. The statute relieves the unnotified insurer "of any liability to pay any judgment or other sum on behalf of its insureds," and the terms "any liability" for "any judgment" may well reach liability for a bad-faith lawsuit over an excess judgment that the insurer had no opportunity to defend against.  *Id.*  And in a real sense, payment here would amount to payment "on behalf of" GEICO's insured.  As the bankruptcy trustee's attorney (who was also the cyclist's attorney) pointed out in his closing arguments before the jury, "this case is about Terry," the injured cyclist: the bankruptcy trustee "is merely a conduit as the trustee in bankruptcy." So a win for the bankruptcy-trustee-and-cyclist's-attorney will just channel GEICO's money into the cyclist's pocket.  And what will have put it there is the default judgment the cyclist has against the driver—the judgment entered without any notice to GEICO.

The parties have not found a case resolving how the notice statute applies in this context.  Some cases have held that the statute prevents recovering on a default

---

[2] Because no party has raised this issue, we do not consider whether a bankruptcy trustee is the equivalent of the bankrupt individual for purposes of O.C.G.A. § 33-7-15.  We proceed as if the two are the same.

10

judgment from an insurance provider who was not notified of the original suit. *See, e.g.*, *Chadbrooke Ins. Co. v. Fowler*, 206 Ga. App. 778, 779 (1992); *Berryhill*, 174 Ga. App. at 99. Under the analysis of those cases, GEICO would not be liable to pay for the default judgment if the cyclist had sued the insurance company directly to recover under the insurance policy.

But those cases were not about a tort committed against the insured. Another case from the Georgia Court of Appeals may shed more light. In *Canal Indemnity Co. v. Greene*, the court considered a bad-faith claim assigned to someone who had won a default judgment against the insured. *See* 265 Ga. App. 67 (2003). Even so, the court said that the insurance company "was relieved of its obligations" to "pay any judgment" against its insured, unless the company was properly notified. *Id.* at 69. That observation has some force because, even if the notice statute focuses on contracts, it's not as if the bad-faith tort is completely separate from the contract: to the contrary, it could not exist without it. *See First Acceptance Ins. Co. of Ga., Inc. v. Hughes*, 305 Ga. 489, 492 (2019) (noting liability for an insurer who refuses in bad faith to settle a claim within the contract's policy limits). At the same time, the court's comment in *Canal* is not a holding because it found that the insurance company did have notice of the lawsuit, and thus it is not a controlling precedent. *Id.* at 71–72. That leaves the question open, at least from our perspective.

## B.

The parties also dispute another unclear question of Georgia law, one that could matter if the notice provisions do not bar liability for a bad-faith claim: when

11

an insurer refuses to settle in bad faith and the insured subsequently loses coverage for failure to comply with a notice provision, can the insured still sue the insurer for bad faith? Here, the parties agree that the insured driver was covered when GEICO refused to settle. They also agree that by the time the default judgment was entered, the insured driver had lost coverage for failure to notify GEICO of the lawsuit. This posture matters because an insured cannot sue in Georgia for bad faith if there is no coverage for a claim. *See BayRock Mortg. Corp. v. Chi. Title Ins. Co.*, 286 Ga. App. 18, 19 (2007) (bad-faith failure to settle can only occur if the claim was in fact covered under the policy). That makes sense—breach of a duty to settle is impossible if the insurer, unbound by coverage obligations, had no duty to settle. *See Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1546–47 (11th Cir. 1991) (under Georgia law an "insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused" a judgment in excess of the insurance policy). But it is unclear *when* coverage is relevant to the bad-faith claim under Georgia law.

The bankruptcy trustee says that a bad-faith claim requires coverage only at the time of the insurer's bad-faith failure to settle. If that's so, all that matters is whether the insured had coverage when the bad faith occurred. Some Georgia law may support this view. *See, e.g.*, *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268–69 (1992) ("The jury generally must decide whether the insurer, *in view of the existing circumstances*, has accorded the insured the same faithful consideration it gives its own interest." (emphasis added) (internal quotation mark omitted)).

12

GEICO, on the other hand, says that coverage must be in place when the bad-faith claim accrues with the entry of a default judgment. If that's so, all that matters is whether coverage was in place when the default judgment was entered; if not, no bad-faith judgment can follow. Cases from other jurisdictions may support this view. *See, e.g.*, *Evans v. Mut. Assurance, Inc.*, 727 So. 2d 66, 67 (Ala. 1999) ("[A] cause of action arising out of a failure to settle a third-party claim made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits."); *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 813 (Minn. App. 1992) ("[C]ourts in other jurisdictions have generally held that an action against a liability insurer for failure to settle a claim does not accrue . . . until the judgment against the insured is final."). But we have found no Georgia cases deciding the question.

In short, if the trustee is right that a bad-faith failure-to-settle claim under Georgia law requires only that coverage existed when the insurer refused to settle, then he could sustain a bad-faith claim even after the insured driver lost coverage for failure to notify. This contention rests on the assumption that the insured's failure to comply with the notice provisions does not bar the bad-faith claim outright. But if GEICO is right that the insured driver needed coverage when the default judgment was entered in order for the bad-faith claim to accrue, then the trustee would be unable to state a claim for bad faith after the failure to notify. The relevance of this debate, of course, may hinge on what we learn about O.C.G.A. § 33-7-15, but we ask the question in case we need the answer.

13

C.

Finally, this case raises a novel due process question. "The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard." *Cobb Cnty. Sch. Dist. v. Barker*, 271 Ga. 35, 37 (1999). Notice "is the very bedrock of due process." *Thompson v. Lagerquist*, 232 Ga. 75, 76 (1974). Although GEICO had no notice of the lawsuit against its insured, the default judgment in that case was used as the measure of damages in this case.

GEICO proposes that, assuming the bad-faith lawsuit can go forward, it is unfair to use the excess default judgment as the measure of damages not only because the insurer never had a chance to contest those damages but also because that dollar figure far exceeded the true value of the cyclist's damages. On that score, GEICO's expert pegged the value of the cyclist's claim in the first lawsuit as being worth $15,000; the bankruptcy trustee's expert testified that it could be worth up to $500,000. For his part, the trustee says it is enough that GEICO had a chance to argue that it was not liable for the default judgment, which provides a set and indisputable amount of damages to the driver.

A slew of non-Georgia cases hold that a default judgment cannot be the measure of damages in a later suit against an insurance provider who had no notice of or participation in the original suit. *See, e.g.*, *Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 214 (N.M. 1996); *Nationwide Mut. Ins. Co. v. Webb*, 436 A.2d 465, 481 n.12 (Md. 1981). Those cases, however, were not about an insurance

14

company's own bad faith during settlement negotiations, and in any event, out-of-state cases do not speak for Georgia.[3]

### III.

Though we have our own guesses about the answers to these questions, we do not think it appropriate to substitute our own intuition for the views of the Georgia Supreme Court in deciding these novel issues of state law, at least one of which has significant consequences for Georgia's public policy on motor vehicle insurance.  So we respectfully certify the following questions:

1.  When an insurer has no notice of a lawsuit against its insured, does O.C.G.A. § 33-7-15 and a virtually identical insuring provision relieve the insurer of liability from a follow-on suit for bad faith?

2.  If the notice provisions do not bar liability for a bad-faith claim, can an insured sue the insurer for bad faith when, after the insurer refused to settle but before judgment was entered against the insured, the insured lost coverage for failure to comply with a notice provision?

3.  Does a party have the right to contest actual damages in a follow-on suit for bad faith if that party had no prior notice of or participation in the original suit?

In asking these questions, "we do not intend to restrict the issues considered by the state court or to limit the state court's discretion in choosing how to frame

---

[3] Our question is limited to Georgia's Constitution.  *See City of Houston v. Hill*, 482 U.S. 451, 471 n.23 (1987).  GEICO has not cited a case persuading us that the United States Constitution applies in the way it had hoped, but "the Georgia Constitution has been construed as providing greater protection to its citizens tha[n] does the federal constitution." *Powell v. State*, 270 Ga. 327, 331 n.3 (1998).

or to answer these issues in the light of the facts of this case." *F.D.I.C. v. Skow*, 741 F.3d 1342, 1347 (11th Cir. 2013).  Indeed, we know that the Court may do as it wishes.  With that caveat in mind, we "ask broadly for the state court's help in getting the state law right in this case." *Id.*

The record in this case and copies of the parties' briefs are sent with this certification, as is our sincere appreciation for the Court's time and consideration.

**QUESTIONS CERTIFIED.**