[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14156

_____

HENRY'S LOUISIANA GRILL, INC.,
HENRY'S UPTOWN LLC,

Plaintiffs-Appellants,

*versus*

ALLIED INSURANCE COMPANY OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02939-TWT

_____

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

GRANT, Circuit Judge:

Since the beginning of the Covid-19 pandemic, businesses across the country have sought to recoup losses from their insurers. But a common problem with that approach has been that the businesses' insurance policies protect against only "direct physical loss of or damage to" business property. So far, every federal and state appellate court to consider the issue (including this one) has held that the presence of Covid-19 causes a business's property intangible harm, rather than direct physical harm. That means Covid-related expenses and losses are not covered. Because Georgia law leads to the same result, we affirm.

## I.

When the first influx of Covid-19 cases appeared in Georgia in March 2020, the governor declared a public state of emergency. As officials scrambled to respond, the owners of Henry's Louisiana Grill played their part by suspending dine-in service at their restaurant.

To recover the income it was losing by closing its doors, Henry's quickly filed a claim with its insurer, Allied Insurance Company of America. Under Henry's "Premier Businessowners Property Coverage" policy, Allied agreed to "pay for direct physical loss of or damage to Covered Property" if it was "caused by or resulting from any Covered Cause of Loss." And it would "pay for the actual loss of 'business income'" due to the suspension of

Henry's operations in two circumstances.  *First*, the Business Income provision covered suspensions "caused by direct physical loss of or damage to property at the described premises."  These payments would last for a "period of restoration" following that loss or damage—time allotted for the property to "be repaired, rebuilt or replaced with reasonable speed and similar quality"—unless, of course, the business "resumed at a new permanent location" first.

*Second*, the Civil Authority provision covered interruptions caused by an "action of civil authority" that prohibited "access" to Henry's as part of its "response to dangerous physical conditions" on nearby property—but only if those conditions resulted "from the damage or continuation of the Covered Cause of Loss that caused the damage" to that other property.  A "Covered Cause of Loss," in turn, was defined as a "direct physical loss" of property.

Allied denied coverage.  It found that Henry's closure was not caused by any "direct physical loss or damage."  And under the policy's Virus or Bacteria exclusion, Allied refused to "pay for loss or damage caused directly or indirectly" by any "virus."

Like many other businesses, Henry's sued.  It argued that it suffered a "physical loss of" property when it lost the use of its dining room during the Covid-19 closure.  Its alternative argument was that Allied needed to reimburse its losses under the Civil Authority provision because the governor had restricted access to the area based on what Henry's considered to be physical damage to nearby properties—Covid-19 contamination.

The district court dismissed Henry's complaint for failure to state a claim. It held that no "direct physical loss of or damage to" property occurred because the restaurant and its dining room "underwent no physical change." And even assuming that nearby property "had been damaged by the virus," the court explained, the governor's order had not limited "access" to the surrounding area. Henry's now appeals.

## II.

We review a dismissal for failure to state a claim de novo, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiffs. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1345 (11th Cir. 2022).

## III.

Even though Henry's claims that it has coverage under two provisions, no one disputes that both require a "direct physical loss" of or "damage" to property—either Henry's property or nearby property. This case, then, turns on one question. Does the presence of Covid-19, or a related closure after a declaration of public emergency, result in "direct physical loss of or damage to" a property?

We interpret the policy under Georgia law and "begin, as with any contract, with the text of the contract itself."[1] *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2008). We read the policy

---

[1] Like both parties, we assume that Georgia law governs this contract.

as a layman would read it.  *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (2001).  In doing so, we must also "consider the insurance policy as a whole" and "attempt to harmonize the provisions with each other."  *Nat'l Cas. Co. v. Georgia Sch. Bds. Ass'n-Risk Mgmt. Fund*, 304 Ga. 224, 228 (2018).  The "natural, obvious meaning" of a term "is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case" would suggest.  *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869 (2003) (quotation omitted).  When the terms are unambiguous, we simply apply them "as written."  *Reed*, 284 Ga. at 287.

The Court of Appeals of Georgia has already laid out the groundwork on this issue, so we start there.  *See McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002) (absent a state supreme court decision, we generally follow state intermediate-appellate court decisions on issues of state law).  It interpreted a nearly identical phrase—"direct physical loss of, or damage to"—while reviewing a business's all-risk personal-property insurance policy.  *AFLAC Inc. v. Chubb & Son, Inc.*, 260 Ga. App. 306, 307 (2003).  Based on the "common meaning of the words" and how they fit in with the rest of the policy, it held that the term required proof of "an actual change in insured property."  *Id.* at 308.  Being "physical" meant that the loss or damage had to make the property "unsatisfactory for future use" or meant that the property would need "repairs" before it would be usable again.  *See id.*  So under Georgia law, a

"direct physical loss" always involves a tangible change to a property.

Henry's alleges no actual change to its property. Even if we assume that the governor's Covid-19 order caused loss because it deprived the restaurant of the use of its property, that does not result in a win for Henry's. Allied agreed to provide for only one manner of loss—the *physical* loss of Henry's property. To be physical, the loss itself must be "of or relating to things perceived through the senses as opposed to the mind"; it must be "tangible or concrete." *New Oxford American Dictionary* 1321 (3d ed. 2010). Henry's has alleged nothing of this sort.

Henry's tries to spin its loss as physical—it says it "lost, or was otherwise *deprived* of," a "physical space." A restaurant's dining room, no doubt, is a physical space. But even if the governor's order restricted the dining room's use, that had no physical effect on the property. It did not destroy, ruin, or even damage any part of the restaurant. Because Henry's cannot identify any "actual change" to its property, it suffered no physical loss. *See AFLAC Inc.*, 260 Ga. App. at 308.

No matter, says Henry's, because the Civil Authority provision was triggered by the Covid-19 virus itself. But like the Business Income provision, that provision covers only harms caused by a "direct physical loss" of property. *See Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga. App. 35, 36 (2003). Henry's claims that all the requirements were satisfied because the governor's order was issued in response to the "community spread of COVID-

19," which "damaged" other properties by contaminating them. But what Henry's fails to allege is that the virus effected any actual, physical change on the nearby properties. The mere presence of the virus in other restaurants or businesses did not destroy or ruin those properties.[2]

Finding that Henry's suffered no "physical loss of" property lines up with the rest of the policy. Another limit on Business Income coverage is that it only lasts until the lost or damaged property is "repaired, rebuilt or replaced." Covering costs while a business is brought back into working order confirms that a "physical loss of" property must involve tangible change to the property.

We are not alone in our conclusion; the same one has been reached by every federal and state appellate court to decide "the meaning of 'physical loss of or damage to' property (or similar language) in the context of the COVID-19 pandemic." *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358–59 (11th Cir. 2022) (collecting cases). As we held in *SA Palm Beach*, a case decided under Florida law, an insured must allege a "tangible alteration of the property." *Id.* at 1358. Alleging the "loss of use based on intangible and incorporeal harm to the property due to COVID-19 and the closure orders that were issued by state and local authorities" is not enough. *Id.*

---

[2] Because the policy provides no coverage, we need not consider whether the virus exclusion also would have barred Henry's claims.

8                    Opinion of the Court                    20-14156

★     ★     ★

Henry's Louisiana Grill insured against the "physical loss of or damage to" its property.  But that does not extend to the intangible harm caused by Covid-19 or by a declaration of public emergency issued in its wake.

**AFFIRMED.**