**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11398

_____

ALLIED PROPERTY & CASUALTY INSURANCE COMPANY,
AMCO INSURANCE COMPANY,

*Plaintiffs-Appellees,*

*versus*

BLOODWORTH WHOLESALE DRUGS INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:22-cv-00113-WLS

_____

2                    Opinion of the Court        24-11398; 25-11185

————————————————

No. 25-11185

————————————————

PUBLIX SUPER MARKETS, INC.,

*Plaintiff-Counter Defendant-Appellant,*

*versus*

ACE PROPERTY AND CASUALTY INSURANCE COMPANY,
AMERICAN GUARANTEE & LIABILITY INSURANCE
COMPANY,
FIREMAN'S FUND INSURANCE COMPANY,
THE HARTFORD FIRE INSURANCE COMPANY,
INDIAN HARBOR INSURANCE COMPANY,
STEADFAST INSURANCE COMPANY, et al.,

*Defendants-Appellees,*

GREAT AMERICAN ASSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,
GREAT AMERICAN SPIRIT INSURANCE COMPANY,

*Defendants-Counter Claimants-Appellees.*

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-02569-CEH-AEP

————————————————

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

For almost three decades, pharmacies have filled prescriptions for opioids like OxyContin. Many (including Bloodworth Wholesale Drugs, Inc. and Publix Super Markets, Inc.) now face lawsuits for their alleged part in the opioid epidemic.

Bloodworth and Publix seek coverage for these costs under their liability insurance policies, which require the insurers to defend and indemnify policyholders sued for "damages because of bodily injury." The two cases on appeal ask whether these policies cover the insureds' past and future outlays from the underlying opioid litigation. We certify these important and novel questions of Georgia and Florida law to the Supreme Court of Georgia and the Supreme Court of Florida.

**I.**

"The opioid epidemic represents one of the largest public health crises in this nation's history." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 209 (2024) (quotation omitted). Between 1999 and 2019, almost a quarter of a million people overdosed from prescription opioids—not to mention the countless more who lost their lives to nonprescription opioids like heroin. *Id.* The epidemic has cost the country between $53 and $72 billion every year. *Id.*

Saddled with much of this financial burden, state and local governments and healthcare providers have sued pharmacies like Bloodworth and Publix. In particular, these suits challenge the pharmacies' alleged failure to "monitor, detect, investigate, refuse, and report suspicious orders." The plaintiffs seek to recover the costs of providing healthcare and social services to adults,

4                    Opinion of the Court       24-11398; 25-11185

teenagers, and even infants suffering from opioid addiction, as well as the "costs associated with law enforcement and public safety relating to the opioid epidemic"—to the tune of billions of dollars.

Like many other retail businesses, Bloodworth and Publix purchased liability insurance to mitigate litigation-related risks.[1] With certain limitations and exclusions, Bloodworth's insurers agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Publix's insurers likewise told Publix that they would "pay, on your behalf, those damages and 'claim expenses' you become legally liable to pay because of 'bodily injury' arising out of the 'druggists products hazard'"—that is, hazards from prescription drugs that Publix "prepared, sold, handled distributed or disposed of." And under both sets of policies, the insurers have the "duty to defend" the insureds against "any" suit seeking such damages.

Bloodworth and Publix asked their insurers to help cover the costs of the dozens of opioid lawsuits they now face. The insurers refused, insisting that the policies do not cover claims seeking compensation for economic losses that trace to the opioid epidemic. Bloodworth's insurers then sought a declaratory judgment that they lack both a duty to defend and a duty to indemnify under Georgia law. And Publix sued its insurers for breach of contract under Florida law. In both cases, the district

---

[1] Publix purchased "excess druggists liability" insurance, which is offered specifically to pharmacies.

24-11398; 25-11185      Opinion of the Court                    5

court adopted the insurers' interpretation and granted their motions for summary judgment. Bloodworth and Publix timely appealed.

## II.

The insurance contract is "the measure of the insurer's liability." 1B John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 391 (1981). And we "review *de novo* questions of contract interpretation." *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1340 n.1 (11th Cir. 2019).

## III.

In diversity cases, a federal court must "decide issues of state law the way it appears the state's highest court would." *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021) (quotation omitted). Under both Georgia and Florida law, "the text of the contract itself" controls. *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 35 F.4th 1318, 1320 (11th Cir. 2022) (quotation omitted); *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1227 (11th Cir. 2013). "When the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Morales*, 714 F.3d at 1227 (quotation omitted).

The two cases on appeal turn on whether the underlying opioid lawsuits against Bloodworth and Publix seek to recover "damages because of bodily injury." If the answer is yes, these

lawsuits are covered by the policies.[2]  If the answer is no, they are not.

"Damages" refers to the "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Damages*, *Black's Law Dictionary* 488 (12th ed. 2024); *see* Restatement (Second) of Torts § 902 (A.L.I. 1979).  And both policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person," including "death resulting from any of these at any time."  None of the parties dispute that the underlying opioid lawsuits seek "damages" or that opioid addiction and overdose qualify as "bodily injuries."  Instead, the dispute is over whether the lawsuits against Bloodworth and Publix are for damages "because of" those injuries.

The insurers argue that only lawsuits that seek redress for particular injuries to identifiable people are covered.  To support that contention, the insurers point to the policies' notice provisions, which require the insureds to give notice of any "occurrence" "which may result in a claim" under the policy "as soon as practicable," including—"[t]o the extent possible"—how, when, and where the occurrence took place, the names and

---

[2] While coverage also depends on the applicability of the policies' various exclusions and limitations, the insurers do not point to any that would bar coverage across the board.

24-11398; 25-11185      Opinion of the Court                          7

addresses of any injured persons and witnesses, and the nature of any resulting injury or damage.[3]

The insureds, on the other hand, argue that coverage does not depend on whether the underlying lawsuits seek damages for particular injuries to identifiable people. What matters, in their view, is whether those lawsuits seek damages that trace to physical injuries suffered by a person or a group of people, regardless of whether anyone can identify them. They emphasize that the policies expressly define "damages because of bodily injury" to "include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the bodily injury." These provisions, they argue, squarely cover the underlying opioid lawsuits, filed by states and municipalities ("organizations") to recoup the cost of hospital services ("care") for patients with opioid-related illnesses.

The parties point to various appellate court decisions that have addressed how similarly worded policies apply in mass tort suits challenging the insureds' role in the opioid epidemic. Most have sided with the insurers. *See, e.g.*, *Westfield Nat'l Ins. Co. v. Quest Pharms., Inc.*, 57 F.4th 558 (6th Cir. 2023) (applying Kentucky law); *Acuity v. Masters Pharm., Inc.*, 169 Ohio St. 3d 387 (2022) (Ohio law); *ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239 (Del. 2022) (Pennsylvania and Delaware law). At least one has sided with the

---

[3] The policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

insureds.  *See, e.g.*, *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771 (7th Cir. 2016) (Illinois law).

To decide these questions here, though, we must consider state-law cases from this Court or cases from appellate courts in Georgia and Florida.  There is little to go on that directly addresses this coverage issue.  The district court relied on *Pacific Employers Insurance v. Cesnik*, a Georgia law case in which we held that an insurance policy did not cover a family's breach of contract claim against a church for breaking its promise to provide "perfectly healthy" newborns for adoption.  219 F.3d 1328, 1331–32 (11th Cir. 2000); *see also Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 903 (11th Cir. 1996) (discussing the facts underlying the family's breach of contract claim).  We concluded that because the complaint did not allege a connection between the damages sought and the bodily injury (birth defects) giving rise to the plaintiffs' expenses, the church could not be liable "by reason of or on account of a bodily injury." *Pac. Emps.*, 219 F.3d at 1332.  Here, in contrast, the insureds' prescription practices are alleged to have caused the bodily injuries—opioid addiction and overdose—for which payment is sought.

Bloodworth contends that Georgia courts have already defined "bodily injury" and "because of" in a way that decides this case, but we do not agree.  Bloodworth chiefly relies on *Lunceford v. Peachtree Casualty Insurance*, 230 Ga. App. 4 (1997).  In that case, the court construed a policy provision covering damages "because of bodily injury" to encompass punitive damages, relying on the

24-11398; 25-11185    Opinion of the Court                    9

principle that an "ambiguous" contract "must be construed against the insurer." *Id.* at 7–8. But that holding is not dispositive here. "Ambiguity is a creature not of definitional possibilities" but of context. *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see also Hope Elec. Enters., Inc. v. Schindler Elevator Corp.*, 324 Ga. App. 859, 862 (2013). Language that may be ambiguous for one set of claims is not necessarily ambiguous for others, especially when they arise out of a different legal and factual context. *Lunceford* deals only with whether a policy's coverage extended to punitive damages, and does not give an answer for this case.

*Presidential Hotel v. Canal Insurance*, 188 Ga. App. 609 (1988), and *O'Dell v. St. Paul Fire & Marine Insurance*, 223 Ga. App. 578 (1996), are not fully instructive either. Both cases interpreted insurance policies covering bodily injury as excluding coverage for lawsuits alleging workplace sexual harassment, fraud, and other types of "non-physical, emotional or mental harm." *Presidential Hotel*, 188 Ga. App. at 610–11; *see O'Dell*, 223 Ga. App. at 579–80. But here, the parties do not dispute that opioid addiction and overdose fall under the policies' definition of "bodily injuries."

Turning to Florida law, the Florida Supreme Court has interpreted the term "because of" to require that the "insured's liability be 'caused by' the acts or omissions of the named insured." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 292–93 (Fla. 2007). But the court has yet to spell out which causation standard applies, and what it takes to meet that standard. And while Florida law (like Georgia law) requires courts to construe ambiguous insurance

provisions in favor of coverage, the antecedent question of whether the provisions at issue are sufficiently "ambiguous" to require construing them against the insurer is no less difficult. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532–33 (Fla. 2005); *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302 (1957).

## IV.

As a federal court, we have no place in deciding difficult and important questions of state law. Principles of "federalism and comity" counsel that such issues should be presented to be decided by the state courts in the first instance. *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020). Our precedent thus directs certification to state supreme courts "when we have substantial doubt regarding the status of state law." *Whiteside v. GEICO Indem. Co.*, 977 F.3d 1014, 1018 (11th Cir. 2020) (quotation omitted).

Georgia and Florida law authorize their highest courts to review certified questions of state law when they are determinative to the outcome of the case and "there are no clear controlling precedents" on point. OCGA § 15-2-9(a); Fla. Stat. § 25.031. Just so here. On these issues of first impression, "we do not think it appropriate to substitute our own intuition" for the views of the Georgia and Florida supreme courts. *Whiteside*, 977 F.3d at 1022. The questions in this appeal may have "significant consequences" for the States' insurance markets, with billions of dollars at stake for parties well beyond the players in these few cases. *Id.*

24-11398; 25-11185      Opinion of the Court                        11

We therefore respectfully certify the following question to the Supreme Court of Georgia and the Supreme Court of Florida:

> Do the insurance policies in this case require the insurers to defend and/or indemnify the insured in the underlying opioid lawsuits?

In certifying this question, we do not intend to restrict the issues these courts may consider, nor disturb their discretion "in choosing how to frame or to answer these issues in the light of the facts" of these cases. *Id.* (quotation omitted). We do no more than ask for their "help in getting the state law right." *Id.* (quotation omitted).

With this certification, we send the records in case numbers 24-11398 and 25-11185 to the Georgia Supreme Court and the Florida Supreme Court, respectively. We sincerely appreciate their time and consideration.

**QUESTION CERTIFIED.**